**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Sriniwas Sunkara and
Mary Nacionales-Sunkara individually and
OBO TS., a Minor,

*Plaintiff,*

v.

Bellmawr Public Schools and;
Danielle Sochor, in her individual and official capacities and;
Marie Lewis, in her individual and official capacities and;
Patrick Doyle in his individual and official capacities and;
Anthony Farinelli, in his individual and Official Capacities and;
Oaks Integrated Care Inc. and;
Jefferson Health Corp. and;
Jefferson Cherry Hill Hospital and;
Thomas Jefferson University Hospitals, Inc, and;
Kennedy Health System, Inc. and;
Derrick Vann.

*Defendants.*

**CIVIL ACTION NO. ________**

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT**

Plaintiffs by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, agents, and successors in office, to safeguard their rights under the United States Constitution, State and Federal law, and in support thereof, allege the following:

**PRELIMINARY STATEMENT**

1. This action is brought under Title VI of the Civil Rights Act of 1964, as amended, and New Jersey state common law.

2. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Defendant Bellmawr Public Schools ("District" or the "School") for the actions and omissions of the District, its Administration, its employees, and its agents while Plaintiff TS was enrolled as a student. Plaintiffs aver that Defendant: Owed a duty to Plaintiff TS, Defendants breached that duty, and that breach was the direct and proximate cause of injuries to T.S.; That the Defendant breached the covenant of good faith and fair dealing under New Jersey law and; for violations of civil rights; all as further described in this Complaint. Further, the Defendants held various obligations under state law to provide him a free public education.

3. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Oaks Integrated Care, Inc. Plaintiffs aver that Defendant: owed a duty to Plaintiff TS, Defendants breached that duty, and that breach was the direct and proximate cause of injuries to T.S.; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution; for negligent hiring, negligent training and negligent retention of Defendant Derrick Vann and common-law torts committed against Plaintiff; all as further described in this

Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by their profession's ethics and professional standards.

4. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Jefferson Health Corporation. Plaintiff avers that Defendant: owed a duty to Plaintiff TS, Defendants breached that duty and that breach was the direct and proximate cause of injuries to T.S.; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution; and common-law torts committed against Plaintiff; all as further described in this Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by their profession's ethics and professional standards.

5. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Jefferson Hospital Cherry Hill. Plaintiff avers that Defendant: owed a duty to Plaintiff TS, Defendant breached that duty and that breach was the direct and proximate cause of injuries to Plaintiff; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution; for negligent hiring, negligent training and negligent retention of Defendant Derrick Vann and common-law torts committed against Plaintiff; all as further described in

this Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by their profession's ethics and professional standards.

6. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Thomas Jefferson University Hospitals, Inc. Plaintiff avers that Defendant: owed a duty to Plaintiff TS, Defendant breached that duty and that breach was the direct and proximate cause of injuries to T.S.; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution; for negligent hiring, negligent training and negligent retention of Defendant Derrick Vann and common-law torts committed against Plaintiff; all as further my described in this Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by their profession's ethics and professional standards.

7. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Kennedy Health System, Inc. Plaintiff avers that Defendant: owed a duty to Plaintiff TS, Defendant breached that duty and that breach was the direct and proximate cause of injuries to Plaintiff; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution; for negligent

hiring, negligent training and negligent retention of Defendant Derrick Vann and common-law torts committed against Plaintiff; all as further described in this Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by their profession's ethics and professional standards.

8. By this action, Plaintiffs Sriniwas Sunkara, Mary Nacionales-Sunkara, and TS seek redress against Derrick Vann. Plaintiff avers that Defendant: owed a duty to Plaintiff TS, Defendant breached that duty and that breach was the direct and proximate cause of injuries to Plaintiff; that the Defendant breached the covenant of good faith and fair dealing under New Jersey law; for violations of civil rights; for malicious prosecution and common-law torts committed against Plaintiff; all as further described in this Complaint. Further, Defendant held various obligations under state law and federal law to protect the privacy of TS, to exercise sound clinical judgment, and to abide by his profession's ethics and professional standards.

9. Plaintiff seeks declaratory and injunctive relief against the Defendants for their acts, and seeks compensatory, consequential, and punitive damages from the Defendants in respect of the same. Plaintiffs also seek the recovery of attorneys' fees.

## JURISDICTION AND VENUE

10. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiff brings claims arising under federal law.

11. This court has supplemental jurisdiction over the Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

12. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

13. Plaintiff Sriniwas Sunkara is the parent and natural guardian of TS, a minor child. Plaintiff resides at 301 Bradley Ave, Bellmawr, NJ 08031.

14. Plaintiff Mary Nacionales-Sunkara is the parent and natural guardian of TS, a minor child. Plaintiff resides at 301 Bradley Ave, Bellmawr, NJ 08031.

15. Plaintiff TS is a minor enrolled in the Bellmawr Public Schools at all relevant times. Plaintiff resides at 301 Bradley Ave, Bellmawr, NJ 08031.

16. Defendant Bellmawr Public Schools ("District") is a governmental entity organized to provide K-12 educational services, which is believed to be doing business at 256 Anderson Avenue, Bellmawr, NJ 08031.

17. Defendant Bellmawr is a "state actor" for all purposes under United States civil rights laws, including 42 U.S.C. § 1983.

18. Defendant Danielle Sochor ("Sochor") is the Superintendent of the Bellmawr Public Schools and is believed to be doing business at 256 Anderson Avenue, Bellmawr, NJ 08031.

19. Defendant Marie Lewis ("Lewis") is a registered nurse in the State of New Jersey who was employed by Bellmawr Public Schools as a school nurse at all relevant times. She is believed to be doing business at 256 Anderson Avenue, Bellmawr, NJ 08031.

20. Defendant Patrick Doyle ("Doyle") was employed by the Bellmawr Public Schools as the School Business Administrator and, at certain relevant times, acted in the place of and with the authority of the principal. He is believed to be doing business at 256 Anderson Avenue, Bellmawr, NJ 08031.

21. Defendant Anthony Farinelli ("Farinelli") was employed as the principal at Bell Oaks Middle School and was the chief administrator, and is believed to be doing business at 256 Anderson Avenue, Bellmawr, NJ 08031.

22. Defendant Oaks Integrated Care, Inc. ("Oaks") is a domestic non-profit corporation organized under the laws of the State of New Jersey. It is believed to be doing business at 770 Woodlane Road, Mt. Holly, NJ 08060.

23. Defendant Jefferson Health Corporation ("Jefferson") is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania. Jefferson is registered to conduct business in the State of New Jersey as a

foreign non-profit corporation. Its principal place of business is believed to be at 111 S 11th St, Philadelphia, PA 19107.

24. Defendant Jefferson Hospital Cherry Hill is a medical facility and hospital operating in Cherry Hill, New Jersey, which is believed to be doing business at 2201 Chapel Avenue, Cherry Hill, NJ 08002.

25. Thomas Jefferson University Hospitals, Inc. is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania. Jefferson is registered to conduct business in the State of New Jersey as a foreign non-profit corporation.

26. Kennedy Health System, Inc. is a domestic non-profit corporation organized under the laws of the State of New Jersey. It is believed to be doing business at 2201 Chapel Avenue, Cherry Hill, NJ 08002.

27. Defendant Derrick Vann ("Vann") is an employee of Oaks Integrated Care and, at relevant times, acted in coordination with and in concert with the school. Vann was one of the clinicians who evaluated TS and whose signature appears on the form clearing TS back to school. Upon information and belief, Vann does not have a license as a clinical psychologist, nor does he hold any license issued under the authority of the State of New Jersey.

28. Each Defendant may be referred to individually as Defendant and collectively as the Defendants as appropriate.

## FACTUAL ALLEGATIONS

29. TS is enrolled as an eighth-grade student at Bell Oaks Middle School.

30. Bell Oaks Middle School is part of the Bellmawr Public School District (the "District").

31. The District is under the control and supervision of the Bellmawr Public Schools Board of Education (the "Board").

32. The Board appoints a Superintendent to act as the District's chief administrator. At all relevant times, the Bellmawr Public Schools duly appointed Superintendent was Defendant Danielle Sochor.

33. Each school within the Bellmawr Public Schools has a principal who acts as its chief administrator under the direction of the superintendent. At all relevant times, Defendant Anthony Farinelli was the duly appointed principal of Bell Oaks Middle School.

34. In his role as principal, Defendant Farinelli was responsible for all staff within the school, including Defendant Nurse Marie Lewis.

35. In his role as principal, Defendant Farinelli was also the approving authority on any counselor crisis evaluation.

### Defendant Lewis's Relationship with TS

36. Defendant Lewis was, at all relevant times, employed by the District as a school nurse at Bell Oaks Middle School.

37. TS is a student at Bell Oaks Middle School.

38. TS would at times go to Defendant Lewis for treatment within her scope of practice.

39. Specifically, TS would go to Lewis for ice and pain relievers.

40. TS required these services to assist with musculoskeletal soreness and injuries from his participation in martial arts as an after-school extracurricular activity.

41. TS would engage in friendly conversation with Defendant Lewis when in her office.

42. TS felt grateful for the treatment Defendant Lewis provided him to ease his symptoms.

43. In February 2025, TS brought Defendant Lewis a box of chocolates as a gift and as a gesture of gratitude.

44. Defendant Lewis subsequently attacked TS's reputation and attempted to have him removed from the District through a statement replete with assumptions and falsehood. This statement was given to the Defendant District. More specifically, two weeks after TS gave her the chocolates, Defendant Lewis alleged that TS poisoned her and another student with the box of chocolates.

**Defendant Lewis's Statement about TS**

45. The statement referred to in paragraph 44 that Defendant Lewis conveyed to the administration of Bell Oaks Middle School regarding alleged behavior of TS were false and misleading.

46. Specifically, Defendant Lewis made the following claims:

a. Defendant Lewis states that she became concerned about alleged behavior on the part of TS only after hearing a law enforcement speaker on the topic of school shootings. At no time did defendant TS discuss school shootings with Defendant Lewis or any other person.

b. Defendant Lewis states correctly that TS came to her office for bandages and Acetaminophen to treat being sore and injuries from martial arts training.

c. Defendant Lewis states that on January 17, 2025, TS brought Defendant Lewis a box of Godiva chocolates.

d. Defendant Lewis asserts that she ate candy from the box that TS gave her and offered the candy to at least one other student, who also ate from the box.

e. Despite eating the chocolates, Defendant Lewis claims in her statement that the box did not have cellophane and was secured by two paper bands.

f. Defendant Lewis asserted that a student who ate approximately five pieces of the chocolate was hospitalized with a bowel obstruction. Defendant Lewis, without any factual basis, contended that the bowel obstruction was the result of poison inserted in the chocolates.

g. Defendant Lewis disposed of the box of chocolates on January 24, 2024.[1]

h. Defendant Lewis states that on February 5th, 2025, TS came to her for bandages.

i. Defendant Lewis further states that on February 5th, 2025, TS made several statements to her, including: "I'm quiet"; "I am dead inside"; "I was bullied when I was younger"; "I used to imagine jabbing a pencil in the neck of some of these kids"; and "I'm violent." TS never made these statements. TS only confided in Defendant Lewis, as who he thought was a trusted adult, that he had been bullied years prior.

j. However, Defendant Lewis next claims that she was out sick on February 5th, 6th, and 7th, making it impossible for TS to make the above statements on the date alleged.

k. Defendant Lewis also claims, without proof, she was poisoned by the box of chocolates and was in fear for her life.

l. Defendant Lewis stated that her absence from school stemmed from an eye infection, which she attributes to the chocolate

[1] This prevented any analysis or testing.

m. Lewis further claims that TS came to her office on February 10th or 11th. This is another factual impossibility, as TS was absent from the District from February 10th through February 14th, due to the flu and pneumonia. The District was aware of this as they were provided doctors' notes, which stated the reasons for his absences. True and correct copies of those doctors' notes are attached hereto as Exhibits “A1” and “A2”.

47. Defendant Lewis claims she was poisoned; yet, neither she nor any other individual has provided any proof whatsoever. She also alleged no profile of symptoms that substantiates that claim.

48. Upon information and belief, Lewis is not a trained toxicologist and is unqualified to diagnose symptoms of poisoning in herself or others.

49. As a result of Defendant Lewis’s baseless claims and allegations, TS would be removed from the District and was referred for psychological evaluation

50. Defendant Lewis's statement is replete with contradictions, inconsistencies, and impossibilities, and is wholly devoid of objective facts and evidence. Yet, the District accepted this statement, despite Lewis’ lack of expertise in toxicology, as fact without regard for due process, due inquiry, or due investigation. Even the most rudimentary investigation would have found that Defendant Lewis was not present on the date the alleged statements occurred and that there was no evidence to support Defendant Lewis’s contention that

the chocolates contained an unspecified poison. Therefore, the entire reason for the evaluation was without basis or merit.

51. Further, an eye infection and a bowel obstruction constitute highly unorthodox presentations for alleged poisoning.

52. Defendant Lewis claims she first became ill on February 5th, 2025, and wrote her statement on February 17th, 2025. During the twelve days between February 5th and February 13, she does not indicate that any medical testing was accomplished. No evidence of testing or any other evidence to substantiate the alleged chocolate poisoning claim has even been presented.

53. A finding of fact by Administrative Law Judge, the Honorable Tricia M. Caliguire, of the New Jersey Office of Administrative Law, following oral argument and review of a comprehensive record, drew the following conclusion: “there is **no evidence**[Emphasis added] that any person who ingested the chocolates suffered food poisoning as a result.” Order Granting Emergent Relief, S.S. ON BEHALF OF T.S., v. BOARD OF EDUCATION OF THE BOROUGH OF BELLMAWR, EDU 04088-25 (March 19, 2025). A true and correct copy of this order is attached hereto as Exhibit”B”. This order will hereinafter be referred to as the “OAL Order.”

**First Referral for Evaluation**

54. On February 14, 2025, Robin Belz, one of the school counselors, initiated a crisis referral of TS. A true and correct copy of this referral is attached hereto as Exhibit "C".

55. Defendant Farinelli, acting as the chief administrator of Bell Oaks Middle School, signed the referral.

56. The referral does not list a referring staff member, despite the referral being initiated by Defendant Lewis.

57. The referral refers to the statement Defendant Lewis claims TS made on February 5th. The referral was based solely on the statement by Defendant Lewis. By her own admission, as detailed *supra*, Defendant Lewis was not present at the school on February 5th, 6th, or 7th, the date she alleges TS made the statements she reported.

58. Upon receipt of the crisis referral, neither Defendant Farinelli nor any other District employee conducted an investigation or verification of the alleged facts contained in the referral.

59. As a result of the crisis referral, TS was sent to Oaks Integrated Health ("Oaks") for a psychological evaluation. The crisis referral and the erroneous facts contained therein, constituted the sole reason for TS to be sent to Oaks.

60. Oaks cleared TS back to school the same day. A true and correct copy of this clearance is attached hereto as Exhibit "E".

**Second Referral for Evaluation**

61. Robin Belz generated an amended referral on February 18, 2025. A true and correct copy of this referral is attached hereto as Exhibit "D".

62. Defendant Farinelli, acting as the chief administrator of Bell Oaks Middle School, signed the referral.

63. The amended referral does not list a referring staff member, despite the referral being initiated by Defendant Lewis.

64. The amended referral refers to the statement Defendant Lewis claims TS made on February 5th. Again, Defendant Lewis, by her own admission, was not present at the school on that day.

65. This amended referral references additional circumstances requiring additional clearance to return to school from Oaks Integrated Care[2]. These additional circumstances are comprised of the statement by Defendant Lewis, which, as detailed *supra*, contained false and inaccurate assertions

66. TS was again sent to Oaks, which referred him to Defendant Jefferson Hospital Cherry Hill, Jefferson Health Corp, Thomas Jefferson University Hospitals (the "Jefferson Defendants"), and Kennedy Health, Inc.

67. The Jefferson Defendants and Kennedy Health, Inc. held TS, against his will and that of his parents, despite the parents' declining a voluntary commitment.

[2] Defendant District referred students to Oaks Integrated Care for crisis referral evaluations.

68. The Jefferson Defendants and Kennedy Health, Inc. provided no diagnostic basis for holding TS. TS's detention in Jefferson Hospital, Cherry Hill, continued so long that the undersigned counsel prepared to bring a habeas petition.

69. The Jefferson Defendants only released TS when counsel contacted them and advised that they would proceed to litigation.

70. TS was never placed on involuntary commitment and, therefore, the Jefferson Defendants and Kennedy Health had no basis to hold him.

71. TS spent less than one day at Jefferson. Due to a lack of treatment space, most of this time was spent sitting on the hallway floor.

72. On February 19, 2025, at the end of the evaluation, TS was again cleared to return to school. A true and correct copy of this clearance form is attached hereto as Exhibit F.

73. Defendant Derrick Vann signed that clearance. (OAL Order at 5).

74. Despite signing the clearance form at Exhibit F, Defendant Vann proceeded to call Bell Oaks Middle School.

75. Defendant Vann, contacted the Bell Oaks Middle School nurse's office, asking to speak with Defendant Lewis. This is confirmed by the Affidavit of Defendant Sochor, attached hereto as Exhibit H, as introduced at the underlying Emergent Relief Hearing. (OAL Order at 5; Ex. H at ¶¶ 32–36).

76. Vann allegedly told another Bell Oaks Middle School nurse that he believed, contrary to the form he signed, that T.S. presented a danger to Lewis. *Id.* These statements motivated Defendant Superintendent Sochor to contact Defendant Vann herself. (Ex H., ¶¶ 32–36). One week later, Defendant Sochor confirmed the subsequent conversation in a letter to Defendant Vann. (Ex. H.) In this letter, Defendant Sochor states, in pertinent part, "we understand that Oaks discharged T.S. and provided a document approving his return to school[.]" *Ibid*. (OAL Order at 5).

77. By her own admission, Defendant Sochor was aware TS was psychologically cleared to return to school. Yet, Defendant Sochor continually changed the requirements for clearance without an adequate basis.

78. Oaks is the crisis referral service selected by the District; yet, upon information and belief, Defendant Sochor, did not advise Oaks of any deficiencies with the forms and only stated her understanding that Oaks had cleared TS.

79. Upon information and belief, this was in furtherance of a plan executed in concert with the other Defendants to keep TS out of the District, based on personal bias, personal opinions, and a discriminatory basis.

80. Despite Defendant Sochor stating, "we understand that Oaks discharged T.S. and **provided a document approving his return to school,**" [emphasis added] the District still refused to accept TS back to Bell Oaks Middle School

and asserted that the form was insufficient because it was not filled out by a medical practitioner. Again, it bears repeating that the District selected Oaks Integrated Care to evaluate TS.

81. Defendant Vann made his phone call to the District despite clearing TS back to school as part of a team decision. Vann, without any credible, competent evidence, stated that Defendant Lewis was in danger.

82. Further, Vann signed the clearance form indicating that his subsequent phone call to the District was not based on medical or psychological evidence, but, instead, was based purely on his personal feelings. In addition, Vann is not permitted to break confidentiality except in limited cases. For example, "[t]he licensee has information that the client presents a clear and present danger to the health or safety of an individual[.]" N.J. Admin. Code § 13:34-18.5. However, it cannot possibly be the case that Vann felt TS presented a clear and present danger, because he signed the form clearing him to return to school, the same place where the alleged individual in danger works.

83. As such, Vann's phone call was unlawful, in violation of his professional ethics, and shed false light on TS.

**Attempts to Return to School**

84. After receiving clearance from competent medical providers, TS attempted to return to school on Friday, February 21, 2025.

85. On that same date, Defendant Doyle contacted the parents of TS, demanding that TS be picked up from school, indicating that he was not permitted to be in attendance. Defendant Sochor was copied on that email and was fully aware of the events. Despite being the District's chief administrator, she took no action to remedy the situation. The District deemed the documentation provided insufficient. In discussions with Oaks Integrated Care, Oaks Integrated Care stated clearly that it could not provide anything else, that TS is fully cleared, and that the remainder of the clearance form is for the District to complete.

86. Thus, the district ignored the professional opinions of practitioners in the field, selected by the District itself to evaluate TS.

87. Despite being cleared by Oaks on two occasions, TS was not returned to the District and was instead placed on virtual learning. Defendant Sochor personally sent an email advising the parents of TS that TS would be restricted to home instruction. In other words, the District subjected TS to a change in placement and excluded him from in-person instruction.

88. As a direct result of the Defendant District’s actions, TS was stranded at home, and isolated from his peers and school community. The District did not consider his emotional and mental well-being or academic advancement. Instead, it has shown that its only concern is continuing to validate Defendant Lewis's baseless and defamatory allegations. In doing so, the District has adopted and ratified Defendant Lewis’ statement.

**Emergent Relief Hearing**

89. On March 3rd, 2025, Plaintiffs, by and through their counsel, filed a Petition of Appeal and Motion for Emergent Relief with the Office of Administrative Law[3] (the "OAL").

90. On March 17, 2025, Plaintiffs and Defendant District, through their attorneys, appeared for oral argument.

91. The Plaintiffs and Defendant District each presented various exhibits to the Administrative Law Judge (the "ALJ"), along with their respective oral arguments on the record.

92. On March 19, 2025, the ALJ published her findings in an order, which is attached hereto as Exhibit "B" and cited in relevant part throughout this pleading.

93. That OAL Order found in favor of the Plaintiff and Ordered that the relief sought by Plaintiff was granted. Namely, it was ordered that the District's action denied T.S. a free public education, in violation of the New Jersey Constitution. It further compelled Defendant District to return T.S. to in-person instruction in the Bellmawr Public School District (District).

**Renewed Efforts to Return to School**

[3] The Office of Administrative Law is New Jersey's administrative law court.

94. Following the ALJ's order, Defendant District and Defendant Sochor have continued their crusade against TS.

95. On March 19, 2025, after the ALJ published the OAL Order, the Plaintiff's parents emailed the District and advised that they were sending TS to school on the morning of March 20, 2025.

96. Sochor responded that same night: "Please be advised that he can't return tomorrow. We need to schedule a parent meeting and develop a reentry safety plan that includes you as the parent, and then we can bring in [TS] to hear what he would need for reentry. We want to ensure we have the support in place to allow him to be successful. I will call you in the morning to secure a time for us to meet. I will be in attendance as well. Is there any teacher you would like to have in attendance to provide recommendations?"

97. Nowhere in the OAL Order does it dictate that the District is permitted to delay or attach additional conditions to the return to school; yet, it did just that.

98. Shortly after the OAL Order was published, the District's lawyer also called Plaintiffs' counsel, claiming that the OAL Order is not applicable because they intend to file exceptions to it. The District's lawyer further requested that Plaintiff's counsel withdraw the Emergent Relief Petition because they believe that their mere intent to file exceptions rendered the OAL Order moot. The

District's lawyer was unable to support that allegation because no such support exists. The District never filed those alleged exceptions.

99. Under New Jersey State Law, the Agency Head takes the ALJ's OAL Order and, within forty-five days, can adopt it into a final order, modify it, or reject it. However, the intent to file exceptions and the actual filing of exceptions do not render the OAL Order moot or delayed.

100. The Agency Head adopted the OAL Order of the ALJ.

101. The District, Sochor, and Farinelli utterly disregarded and disrespected the rule of law.

102. TS was not returned to the District until March 24, 2025, and only after the Plaintiffs complied with the District's unlawful demands in violation of the OAL Order of the ALJ. Specifically the District required:

a. Reentry meetings which substantially delayed reentry and;

b. Development of a reentry safety plan.

**<u>Further Instances of Discriminatory Conduct</u>**

103. Even after TS was returned to the District, the District subjected him to discriminatory conduct and it treated him differently from his peers.

104. Whenever TS transited through the school, such as between classes, he was followed and closely observed by a faculty or staff member. Upon information and belief, these faculty and staff members are members of the child study

team. It should be noted that Parents have never signed a prior-written notice for special education evaluations and TS is not a student who receives special education.[4]

105. In the lunchroom, there was always a staff member or faculty member in close proximity. Upon information and belief, these faculty and staff are members of the child study team.

106. These staff members continued to follow and observe TS in the classroom, as well. Again, upon information and belief, these faculty and staff are members of the child study team.

107. Other students have reported to Plaintiff that when TS is absent, those faculty and staff members do not go to the cafeteria.

108. These acts are restrictive and stigmatizing. The District has unilaterally decided to place TS under heightened restrictions.

109. On June 2nd, 2025, the Plaintiffs were summoned to a meeting with District officials.

110. This meeting was convened to discuss an alleged incident involving TS.

111. The alleged incident occurred on May 29, 2025. TS was permitted to attend school regularly on May 30, 2025.

[4] Plaintiffs, however, assert that he meets the Individuals with Disabilities Act's thought-to-be-eligibility criteria.

112. However, on June 2nd, 2025, TS was suspended for allegedly making threats. No threat was ever made. TS allegedly said, "I felt like I could have started swinging." This is a description of emotion and not a threat.

113. Once again, these statements were unwitnessed and only reported by a single staff member. The associated report also contains significant embellishments related to TS's tone and state of mind.

114. Upon information and belief, other students who have been suspended are not followed throughout the campus by the child study team.

115. Upon information and belief, TS is followed by the CST, whereas his white peers are not, even when returning from suspension. In fact, TS reports that he has observed that the white students are not followed, while he, as an Asian student of Indian and Filipino descent, is.

116. Furthermore, TS reports that the white students are not profiled and treated as threats to school safety. However, he reports the District has treated him as an alleged threat.

117. As a direct result of the District's harassment and intimidation, TS is unable to enjoy his school experience fully. He is under extreme stress, is unable to eat consistently, and is not fulfilled by the educational experience.

118. Upon information and belief, the District has undertaken this extreme course of action in direct response to the advocacy of undersigned counsel and the victory secured for TS at the emergent relief hearing. The treatment TS

has endured since that hearing is retaliatory and undertaken as an effort to chill advocacy.

119. This civil complaint now follows.

## CAUSES OF ACTION

### COUNT I

**Title VI of the Civil Rights Act of 1964**
**Discrimination and Exclusion Based On Race**
***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. the Bellmawr School District***

120. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs 1-118 of this Complaint as if set forth in full herein.

121. Defendant District, through its employees and agents acting under the color of state law, subjected Plaintiff to discriminatory treatment in violation of Title VI of the Civil Rights Act of 1964, as pleaded in ¶¶ 99-100

122. Plaintiff TS is a member of a protected class. Specifically, he is an Asian student of Indian and Filipino descent

123. Plaintiff alleges that the Defendant violated his rights under Title VI when it discriminate against him on the basis of his race when:

a. 42 U.S.C. 2000d, which is Title VI of the Civil Rights Act of 1964, affirms, "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

b. The Defendant District is a federal funds recipient.

c. TS is an Asian student who is of Indian and Filipino descent.

d. The Defendant District subjected TS to racial discrimination as set forth in ¶¶ 103-118 which included, *inter alia*, profiling him, treating him as a threat to the school environment, and taking steps to exclude him from accessing his education.

e. TS reports that the District has not subjected his white peers to this same treatment.

124. The Defendant's wrongful and racially discriminatory actions, including the false accusation of poisoning, subsequent suspension, and continued profiling were motivated by racial animus were carried out in a manner that disproportionately affected the Plaintiff due to their race.

125. The Defendant District failed to follow appropriate procedures in investigating the accusation and removing the Plaintiff, as outlined in the

school's disciplinary policies. This failure disproportionately impacted Plaintiff because of their race.

126. As a result of the Defendant District's racial discrimination, Plaintiff has suffered harm to their reputation, emotional distress, anxiety, and humiliation, as well as loss of educational opportunities and access to a fair and equal education.

127. The Defendant District's conduct denied TS access to the benefits of his education.

128. The Defendant's deliberate indifference to the ongoing racial discrimination and/or deliberate indifference is the direct and proximate cause of the Plaintiff's harm.

129. The Defendant's actions were willful, malicious, and recklessly disregardful of the Plaintiff's rights, justifying an award of damages.

WHEREFORE, Plaintiff now demands judgment against Defendant Bellmawr School District for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, and any other relief this Court deems just and proper.

**COUNT II**
**42 U.S.C. § 1983--Denial of Procedural Due Process**
***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S v. Bellmawr Public Schools***

130. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs 1-118 of this Complaint as if set forth in full herein.

131. **Due Process Violation under the 14th Amendment**: The Defendant, acting under the color of state law, deprived the Plaintiff of their right to due process as guaranteed by the 14th Amendment of the United States Constitution. Specifically, the Defendants failed to provide the Plaintiff with adequate notice of the charges, the opportunity to confront witnesses, the opportunity to present evidence, or the opportunity for a fair and impartial hearing prior to removing the Plaintiff.

132. **Due Process Violation under the New Jersey Constitution**: The Defendant's actions also violated the Plaintiff's rights under the New Jersey State Constitution, which guarantees the right to procedural due process in the context of school disciplinary proceedings. N.J. Const. art. VIII, sec. 4, par.1. *Goss v. Lopez,* 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D.N.J. 2008)).

133. It is well settled in New Jersey that students have a vested property interest in their education. *B.S. v. Noor-Ul-Iman Sch., No.* 8073-13, 2016 N.J. Super. Unpub. LEXIS 1847, 2016 WL 4145921, at *6 (N.J. Super. Ct. App. Div.

Aug. 5, 2016). The Defendant's failure to provide the Plaintiff with an adequate opportunity to defend themselves before being subjected to removal and other disciplinary consequences constitutes a due process violation under state and federal law.

134. As a result of these due process violations, the Plaintiff has suffered harm, including emotional distress, damage to their reputation, loss of academic progress, and denial of a fair and impartial educational environment.

WHEREFORE, Plaintiff now demands judgment against Defendant Bellmawr Public Schools for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, and any other relief this Court deems just and proper.

**COUNT III**

**42 U.S.C. § 1983--Denial of Right to Free Speech and Retaliation for Engaging in Protected Speech/Expression**

***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. Bellmawr Public Schools, Patrick Doyle, Anthony Farinelli, and Danielle Sochor***

135. Plaintiffs hereby realleges all matters set forth in the preceding paragraphs 1-118 of this complaint and incorporate them herein.

136. It is well-settled law in the United States that students retain free speech rights in school. "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the

schoolhouse gate." *Tinker v. Des Moines Independent School District*, 393 U.S. 503 (1969).

137. Plaintiffs acknowledge that the right to free speech is not without restriction. Such limitations in the school setting include speech that causes or is reasonably forecasted to cause a "substantial and material disruption"; threatens serious harm to the school or community; encourages illegal actions; contains lewd, vulgar, or profane language; or would violate someone else's rights.

138. Such limitations also include true threats.

139. The U.S. Supreme Court defined true threats in *Virginia v. Black* as "statements where the speaker means to communicate a **serious** expression of an **intent** to commit an act of unlawful violence to a particular individual or group of individuals." 538 US 343 (2003). According to the Supreme Court, true threats include when a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

140. Here, the alleged threat of "I felt like I could have started swinging" was not a serious expression and was devoid of intent. TS merely expressed the emotions he was feeling, in a past moment, and did not express any intent to take action. That statement does not establish the requisite intent required to deem it a true threat under the law.

141. The statement was not conveyed to any particular individual who would be an alleged victim.

142. TS was ultimately suspended for these statements. However, these statements do not amount to true threats under the law. These statements are merely the expression of emotions of frustration and anger and, in no way, indicate the intent to do anything. The statements fall short of any kind of threat and certainly do not constitute a true threat.

143. By suspending TS for these statements, the Defendants have violated his rights to free speech and free expression.

144. Further, the Defendants have retaliated against the Plaintiffs for filing a "petition [to] the government for redress of grievances."

145. That petition was the filing for, attending of, and ultimate vindication at, the underlying emergent relief hearing.

146. After succeeding at the emergent relief hearing, and as pleaded more fully in paragraphs 86-90, TS was still not permitted to return to the District.

147. Further, even after his return, staff would follow and closely monitor TS at all times on District grounds, causing TS to be ostracized and stigmatized.

148. Upon information and belief, the District undertook this course of action to harass and intimidate TS and his family.

149. These actions were retaliatory for the family pursuing emergent relief.

150. Emergent relief proceedings are presided over by Administrative Law Judges, employed by the State of New Jersey to redress citizen grievances.

151. This is the exact type of proceeding contemplated by the First Amendment when it states that there can be no abridgment of the right to ". . . petition the government for redress of grievances."

152. By engaging in the aforementioned retaliatory conduct in response to Plaintiff's engaging in the petitioning of the government for redress, the Defendants have violated the Plaintiff's constitutional rights.

WHEREFORE, Plaintiff now demands judgment against Bellmawr Public Schools, Patrick Doyle, Anthony Farinelli, and Danielle Sochor for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, and any other relief this Court deems just and proper.

## COUNT IV
### 42 U.S.C. § 1983--Ratification
***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. Bellmawr Public Schools, Patrick Doyle, Anthony Farinelli, and Danielle Sochor***

153. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs 1-118 of this Complaint as if set forth in full herein.

154. Defendant Bellmawr Public Schools is a municipal entity organized under the laws of the State of New Jersey and operates public schools within its

jurisdiction. It is a "person" under 42 U.S.C. § 1983 and is subject to liability under *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

155. At all times relevant to this Complaint, the individual employee(s) of the School Board—Defendant Sochor, Defendant Doyle, Defendant Lewis, and Defendant Farinelli —acted under color of state law and within the scope of their employment with the School Board.

156. Plaintiff suffered a deprivation of clearly established constitutional rights secured by the United States Constitution, including but not limited to the Fourteenth Amendment right, as a direct result of the actions of School Board employees.

157. After the unconstitutional conduct occurred, the School Board, through its final policymaking authority—either the Board itself or a designated official with final authority—was fully aware of the material facts and the constitutional violations committed by its employees.

158. Despite this knowledge, the School Board ratified the unconstitutional conduct by:

a. Failing to take disciplinary action against the responsible employee(s);

b. Refusing to implement remedial policies or procedures to prevent recurrence;

c. Approving or adopting the challenged conduct as consistent with School Board policy or practice and;

d. Failing to remedy the violation.

159. Under the policies of the Defendant District, Defendant Sochor, in her role as superintendent, was empowered to make decisions on matters not clearly covered by other policies, provided, however, that she informed the school board of those decisions thereafter. (Board Policy 1230 at 5).

160. The School Board's ratification amounted to an official endorsement of the unconstitutional acts, thereby rendering the Board liable under *Monell* and subsequent authorities, including *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), and *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009).

161. The School Board's ratification was a proximate cause of the constitutional injuries suffered by Plaintiff, entitling Plaintiff to damages under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff now demands judgment against Bellmawr Public Schools, Patrick Doyle, Anthony Farinelli, and Danielle Sochor for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, and any other relief this Court deems just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. Oaks Integrated Care Inc., Jefferson Health Corp., Jefferson Cherry Hill Hospital, Thomas Jefferson University Hospitals, Inc, and; Kennedy Health System, Inc. and, Derrick Vann***

162. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs 1-118 of this Complaint as if set forth in full herein.

163. The Defendant's intentional and reckless conduct resulted in TS being removed from the District, specifically:

a. Defendant Oaks, through its employee Defendant Vann, directly called the Defendant District despite Defendant Oaks clearing TS to return to school. This phone call included calling TS a danger to Defendant Lewis.

b. Defendant Oaks participated in restraining TS against his will despite *not pursuing an involuntary commitment*. Oaks was joined in executing this restraint by the Jefferson Defendants and Defendant Kennedy Health System.

c. The aforementioned Defendants forced TS to sit in a hallway for hours because they did not have sufficient bed space.

d. The aforementioned Defendants held TS for so long, and without consent, that the undersigned counsel began filing a habeas petition.

164. The Defendant's reckless conduct was its disregard for the pursuit of truth and acting uninformedly.

165. The Defendant's conduct was extreme and outrageous, exceeding the bounds of decency and, thus, was utterly intolerable in civilized society.

166. Plaintiff, TS, in no manner contributed to his emotional harm, which was a direct and proximate result of Defendant's conduct.

167. TS is now experiencing physical manifestations of his emotional distress, which included, *inter alia*, disruptions to his sleep, inability to eat, gastrointestinal upset, and severe stress.

168. TS has sought medical treatment and counseling to address the symptoms he has endured.

169. As a direct and proximate result of Defendant's infliction of emotional distress, TS. suffered from the traumatic experience of being involuntarily committed and being removed from the District.

WHEREFORE, Plaintiff now demands judgment against Oaks Integrated Care Inc., Jefferson Health Corp., Jefferson Cherry Hill Hospital, Thomas Jefferson University Hospitals, Inc, and; Kennedy Health System, Inc. and, Derrick Vann for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, punitive damages and any other relief this Court deems just and proper.

## COUNT VI
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION OF STAFF
***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. Oaks Integrated Care***

170. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs 1-118 of this Complaint as if set forth in full herein.

171. Defendant Oaks had a duty to use reasonable care to select an employee who was competent and fit to perform the duties required as an employee. Defendant Oaks owed such duty to Plaintiff and all other people who could have been harmed by Defendant Vann's actions, including: false reporting and; reckless disregard for the truth.

172. Defendant Oaks knew or should have known that Defendant Vann would likely behave in a manner detrimental to a child's well-being.

173. Defendant District knew or should have known that Defendant Vann was not competent or fit for the duties required of her as an employee. Defendant Oaks breached its duty to use reasonable care to select and retain an employee who was competent and fit for the position.

174. Vann's lack of fitness for the position is evidenced by his utter disregard for TS's well-being, going so far as to make false and defamatory allegations about him of such a severe nature. TS could have had his entire future taken away from him in the blink of an eye.

175. Upon information and belief, Vann does not have any type of professional licensing in the State of New Jersey. Plaintiffs base this belief on a diligent search of the New Jersey Department of Consumer Affairs License database. A true and correct copy of the results of this search is attached hereto as Exhibit G.

176. Vann was the primary Oaks employee who made decisions about TS and his ability to return to the District. Vann was also in a position to call the District and further impede TS's return despite having no license in the State of New Jersey.

177. As a direct result of Defendant's aforementioned negligence, TS was injured as alleged and suffered damages as alleged.

178. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered economic, consequential, and special damages in amounts to be determined at trial.

WHEREFORE, Plaintiff now demands judgment against Defendant Oaks Integrated Care for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, punitive damages and any other relief this Court deems just and proper.

## COUNT VII
## NEW JERSEY LAW AGAINST DISCRIMINATION- *aiding and abetting*
## *Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. All Defendants*

179. Plaintiffs hereby reallege all matters set forth in the preceding paragraphs 1-118 of this complaint and incorporate them herein.

180. Plaintiffs assert that Defendants Sochor, Doyle, and Farinelli aided and abetted Bellmawr Public Schools' tortious and discriminatory conduct, as pleaded in the factual allegations.

181. Upon information and belief, Defendants Sochor, Doyle, and Farinelli maintain supervisory roles at the District.

182. Defendants Sochor, Doyle, and Farinelli aided the District and Defendant Lewis in several wrongful acts, which caused Plaintiffs' injuries. These wrongful acts included, but are not limited to:

   a. By Defendant Doyle refusing to allow TS to return to school;

   b. By Defendant Farinelli authorizing a crisis referral based on what should have been obvious misinformation from Defendant Lewis;

   c. Doyle and Farinelli failed to take steps to meet with TS and his family to ensure the process of reentry into the District was moving forward;

   d. Sochor continued to deny TS access to the school even after the OAL Order.

183. Upon information and belief, the Defendants were all aware of the illegal conduct in which they were engaging and their respective roles.

184. The Defendants knowingly and substantially assisted the principal violations. In other words, the Defendants themselves committed these acts.

185. The Defendants continued to engage in these acts even after TS, through his parents, retained the undersigned counsel and after the undersigned counsel requested by email that the Defendants refrain from this conduct, as the conduct is illegal and discriminatory.

186. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, Defendant denied Plaintiff the benefits of his vested property interest in his education.

WHEREFORE, Plaintiff now demands judgment against all Defendants for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, punitive damages and any other relief this Court deems just and proper.

**COUNT VII**
**FALSE IMPRISONMENT**

***Sriniwas Sunkara, Mary Nacionales-Sunkara, and T.S. v. Oaks Integrated Care Inc., Jefferson Health Corp., Jefferson Cherry Hill Hospital, Thomas Jefferson University Hospitals, Inc, and; Kennedy Health System, Inc. and, Derrick Vann.***

187. Plaintiffs hereby reallege all matters set forth in the preceding paragraphs 1-118 of this complaint and incorporate them herein.

188. In order to establish a claim for false imprisonment, the Plaintiff must show: (1) a willful detention; (2) without consent and; (3) a deprivation of liberty.

189. Here, the Defendants Jefferson Health Corp, Jefferson Hospital Cherry Hill, Thomas Jefferson University Hospitals, Kennedy Health Inc, Derrick Vann, and Oaks Integrated Care were aware they were detaining TS, as evidenced by their request, which was refused, to undertake a voluntary commitment.

190. There is evidence that it was without consent, as TS, through his parents, refused to consent to a voluntary commitment. There is also no evidence that a legally sound, involuntary commitment was undertaken.

191. TS' liberty was deprived as he was unable to move freely, was confined to a hallway within the Hospital, and was denied leaving the facility.

192. Accordingly, Plaintiff has established that the Defendants falsely imprisoned TS in collaboration.

WHEREFORE, Plaintiff now demands judgment against Oaks Integrated Care Inc., Jefferson Health Corp., Jefferson Cherry Hill Hospital, Thomas Jefferson University Hospitals, Inc, and; Kennedy Health System, Inc. and, Derrick Vann for all damages allowed under the law, including compensatory damages for physical and emotional harm, medical expenses, costs of this action, punitive damages and any other relief this Court deems just and proper.

## DAMAGES

193. Plaintiffs suffered general, special, incidental, expectation, punitive, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; lost wages, economic, and employment opportunities, both past and future, and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff now demands judgment against Defendant Jefferson Health Corp, Defendant Jefferson Hospital Cherry Hill, Defendant Thomas Jefferson University Hospitals, Kennedy Health Inc and Oaks Integrated Care for all damages allowed under the law, including compensatory and punitive damages for physical and emotional harm, medical expenses, costs of this action, and any other relief this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all matters capable of being so tried.

Respectfully submitted,

**MONTGOMERY LAW**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
(215) 650-7563
Email: kyle@educationlawyers.com
Email: Bradley@ed-law.com
***Attorneys for Plaintiffs***

By: */s/ Kyle Anthony Adams*
Kyle Anthony Adams, Esquire

By: */s/ Bradley R. Flynn*
Bradley R. Flynn, Esquire

**Filed: June 17, 2025**

**VERIFICATION**

I, MARY NACIONALES-SUNKARA, hereby declare:

1. I am a Plaintiff in the above-captioned matter.
2. I have read the complaint and am familiar with the contents thereof.
3. I make this verification based upon my own personal knowledge or where a statement is based upon information and belief to the best of my knowledge and information.
4. I declare under penalties applicable to false statements under Florida law and federal law that the statements in the foregoing Verified Complaint are true and accurate.

Executed on June 16, 2025

______________________________
MARY NACIONALES-SUNKARA

**VERIFICATION**

I, SRINIWAS SUNKARA, hereby declare:

1. I am a Plaintiff in the above-captioned matter.
2. I have read the complaint and am familiar with the contents thereof.
3. I make this verification based upon my own personal knowledge or where a statement is based upon information and belief to the best of my knowledge and information.
4. I declare under penalties applicable to false statements under Florida law and federal law that the statements in the foregoing Verified Complaint are true and accurate.

Executed on June 16, 2025

______________________________
SRINIWAS SUNKARA